Leslie N. WILSON

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.

Civ. A. No. 8105.

United States District Court,
E. D. Tennessee, N. D.

June 29, 1973.

William W. Jones, Morton, Lewis, King & Jones, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Carl P. McDonald, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

### MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was commenced pursuant to Title 42 U.S.C. § 1395ff(b) and Title 42 U.S.C. § 405(g) for a review of a final decision by the Secretary, after a hearing, denying plaintiff payment for the

cost of services rendered to his wife, Mrs. Odelle N. Wilson, at Extendi-Care/Knoxville, a skilled nursing facility, from and after October 17, 1969.

The facts developed at the hearing on this action show that plaintiff's wife, Odelle N. Wilson, suffered what was finally diagnosed as (1) cerebral thrombosis due to cerebral arteriosclerosis with left hemiplegia, (2) hypertensive arteriosclerotic cardiovascular disease, compensated (3) esophageal hiatal hernia with esophagitis and possibly ulceration, and (4) left calcareous peritendonitis. She was admitted to East Tennessee Baptist Hospital, Knoxville, Tennessee, on August 5, 1969 and was under the care and supervision of Richard C. Sexton, M.D.

Plaintiff was discharged from East Tennessee Baptist Hospital on October 4, 1969 and upon certification and recertification by Dr. Sexton was admitted to Extendi-Care/Knoxville for post-hospital extended care. The record indicates, and there is no evidence appearing to the contrary, that Extendi-Care/Knoxville is a skilled nursing facility within the requirements of the Social Security Act.

Upon entering Extendi-Care/Knoxville, plaintiff's deceased was transferred to and continued under the supervision of John H. Burkhart, M.D., who in answer to interrogatories, stated that the patient required skilled nursing observation. It also appears in the record that Dr. Burkhart prescribed medications, some of which were in the form of injections, and that he continued to follow the patient's progress throughout her stay in the facility. However, the nurse's progress reports, as well as the statement of Mrs. Betty Mays, Director of Nursing Services, indicate that no such injections were in fact given.

Plaintiff, on the other hand, testified that on several occasions, and in his presence, injections were given to the patient to ease her pain and quiet her down. Plaintiff also testified, and the record corroborates such, that a catheter was inserted in order to reduce fluid build-up, which catheter was later removed. The Medical Information record, which is used by the facility in determining the level of care required by a patient, also indicates that an indwelling catheter was necessary for the proper care of this patient.

In his findings of fact, the Hearing Examiner states that the nurse's progress notes, as well as the physician's orders, indicated that the facility was to administer ". . . therapy, use of a catheter, bed rest, feeding, and turning . . ."

The controlling issue, in light of the facts presented in the record, was whether the services rendered by the facility were skilled nursing services as defined in the Social Security Act and pertinent regulations for which compensation will obtain, or whether the services were merely custodial care which is excluded from coverage. Upon the facts found by the Hearing Examiner, he concluded that the services rendered were merely custodial rather than skilled nursing services, and, as a consequence, plaintiff should be denied payment.

Both parties in this action have moved for summary judgment on the ground that the only question for this Court is whether the decision of the Secretary is supported by substantial evidence. Plaintiff asserts that the denial of benefits is the sole result of the Secretary's failure to adhere to his own regulations, and that due to this failure, the Secretary has frustrated the policy of the Social Security Act.

█ It is, therefore, incumbent upon this Court to closely analyze the pertinent statutory and regulatory provisions in order to determine whether the Secretary's decision is based upon substantial evidence.

The conditions and limitations on payment for services are set out in Title 42 U.S.C. § 1395f, which provides in pertinent part:

"Except as provided in subsection (d), . . . payment for services

furnished an individual may be made only to providers of services which are eligible therefor . . . and only if ——

"(2) a physician certifies (and recertifies, where such services are furnished over a period of time . . .) that—

"(C) in the case of post-hospital extended care services, *such services are or were required to be given on an inpatient basis because the individual needs or needed skilled nursing care on a continuing basis* for any of the conditions with respect to which he was receiving inpatient hospital services . . . prior to transfer to the extended care facility or for a condition requiring such extended care services which arose after such transfer and while he was still in the facility for treatment of the condition or conditions for which he was receiving such inpatient hospital services . . ." (Emphasis added).

The term "extended care services" is defined in Title 42 U.S.C. § 1395x(h), in pertinent part, as:

"(1) nursing care provided by or under the supervision of a registered professional nurse;

"(2) bed and board in connection with the furnishing of such nursing care;

."(3) physical, occupational, or speech therapy furnished by the extended care facility or by others under arrangements with them made by the facility;

\* \* \* \* \* \*

"(5) such drugs, biologicals, supplies, appliances, . . . furnished for use in the extended care facility, as are ordinarily furnished by such facility for the care and treatment of inpatients;

\* \* \* \* \* \*

"(7) such other services necessary to the health of the patients as are generally provided by extended care facilities; . . ."

However, Title 42 U.S.C. § 1395y(a)(9) excludes payment for any expenses incurred for items or services which ". . . are for custodial care."

 It is quite clear from the record that Mrs. Wilson was suffering from arteriosclerosis and, upon recommendation of Dr. Sexton, was transferred to an extended care facility. The record further indicates that both Drs. Sexton and Burkhart, in their expert opinions, felt the patient required skilled nursing care *and observation on a regular and continuing inpatient basis.* To that extent, the statute, as set forth above, is satisfied. The only remaining question is whether the care in fact received was custodial rather than skilled under the purview of Title 42 U.S.C. § 1395y(a)(9) and the regulations pursuant thereto.

Section 405.126 of the Social Security Regulations (Title 20 C.F.R. § 405.266) defines post-hospital extended care as:

". . . that level of care provided after a period of extensive hospital care to a patient who continues to require *skilled nursing services* (as defined in § 405.127) on a *continuing basis* (see § 405.128) but who no longer requires the constant availability of medical services provided by a hospital." (Emphasis added)

In defining the term "skilled nursing services," Title 20 C.F.R. § 405.128(b) specifically includes:

"(1) Intravenous or intramuscular injections and intravenous feeding;

\* \* \* \* \* \*

"(4) Insertion or replacement of catheters; . . ." (Emphasis added)

Section 405.128 of the regulations defines "continuing basis" as follows:

"Skilled nursing services are required on a continuing basis (see § 405.126) when the continuing availability of skilled nursing personnel is warranted. In determining whether

the continuing availability of skilled nursing personnel is warranted, the following principles apply:

"(a) *Frequency of services.* The frequency of skilled nursing services required, rather than their regularity is the controlling factor in determining whether the continuing availability of skilled nursing personnel is warranted. For example, a patient may require intramuscular injections on a regular basis every second day. If this is the only skilled service required, it would not necessitate the continuing availability of skilled nurses.

"(b) *Observation.* Observation may be the principal continuous service when the unstabilized condition of the patient requires the skills of a licensed nurse to detect and evaluate the patient's need for possible modification of treatment or institution of medical procedures. For example, pending stabilization of the condition, a patient suffering from arteriosclerotic heart disease may require continuous close observation by skilled nurses for signs of decompensation and loss of fluid balance in order to determine whether the digitalis dosage should be changed or other therapeutic measures should be taken . . ."

A review of the record as a whole, and the Hearing Examiner's findings of fact in particular, demonstrate to this Court that the services rendered to this patient fall squarely within the purview of the above-cited regulations. To reiterate, Mrs. Wilson was an arteriosclerotic patient. Dr. Sexton in his expert opinion felt that she should, upon release from East Tennessee Baptist Hospital, be supervised by skilled personnel in an extended care facility. The Hearing Examiner, in his findings of fact, indicated that Dr. Burkhart thought the patient required "skilled nursing observation" at the outset, and that when her condition worsened skilled nursing services were required to observe her condition.

The record shows that Mrs. Wilson's condition did in fact worsen on or about March 3, 1970, which required a catheter insertion. By definition, this procedure was skilled nursing services (Title 20 C.F.R. § 405.127b(4)). The fact that such an abrupt change in condition did occur indicates that the skilled services required extended throughout the period of inpatient care.

Furthermore, by the very nature of Mrs. Wilson's physical disorder constant observation within the meaning of that term (Title 20 C.F.R. § 405.128(b)) was required, so that in case a change of condition occurred immediate skilled remedial actions could be taken.

The Court recognizes that even though medicines requiring intravenous or intramuscular injections were prescribed, the record fails to disclose whether such were in fact administered. This Court has held in Parker v. Weinberger, (Civil Action No. 8036, May 3, 1973), that where the evidence does not disclose any care other than custodial care, a denial of payments by the Secretary will be affirmed if based upon substantial evidence. That, however, is not the case here. The record here clearly demonstrates that skilled services, other than medical injections were required on a continuing basis.

From a review of the record as a whole, and of the findings of fact of the Hearing Examiner in particular, it is clear that the Secretary failed to properly construe his own regulations in light of the facts presented, and, therefore, his denial of payments to the plaintiff was not based upon substantial evidence.

Accordingly, it is ordered that the decision of the Secretary should be, and same hereby is, reversed and remanded for further proceedings not inconsistent with this opinion.